IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Criminal Case No. 22-cr-00283-CNS-1

UNITED STATES OF AMERICA,

 Plaintiff,

v.

PRESTON BLAKE POWELL,

 Defendant.

---

## ORDER

---

 Defendant Preston Blake Powell moves to dismiss this criminal action on multiple grounds. First, he moves to dismiss the indictment, arguing that his continued detention violates both his rights under the Insanity Defense Reform Act (IDRA) and his Fifth Amendment right to due process. ECF No. 87. Second, he moves to dismiss the indictment for violations of his speedy trial rights as guaranteed by the Sixth Amendment to the United States Constitution and the Speedy Trial Act, 18 U.S.C. § 3161. ECF No. 99. For the reasons below, the Court DENIES Defendant's motions.

## I. BACKGROUND

 On September 8, 2022, a grand jury indicted Mr. Powell on two counts of bank robbery and arrested him shortly thereafter. ECF No. 1. Following a detention hearing, United States Magistrate Judge Kristen L. Mix ordered Mr. Powell detained pursuant to

the Bail Reform Act, 18 U.S.C. § 3142. ECF No. 18. Mr. Powell then filed several Ends of Justice motions. ECF No. 19 (seeking 90-day continuation of Speedy Trial deadline), ECF No. 22 (seeking 120-day continuation), ECF No. 34 (seeking 120-day continuation).

On July 12, 2023, Mr. Powell moved for a competency determination under 18 U.S.C. § 4241. ECF No. 38. The Court granted that motion, and the parties agreed that psychiatrist Darren Lish would conduct Mr. Powell's examination and prepare a report. Following his examination, Dr. Lish determined that Mr. Powell was incompetent to stand trial but likely restorable. ECF No. 55.

On October 5, 2023, the Court held a competency hearing. ECF No. 57. A week later, the Court issued its Commitment Order where it directed that Mr. Powell be placed in the custody of the Attorney General for evaluation for a period of time not exceeding four months, pursuant to 18 U.S.C. § 4241(d). ECF No. 58. The Court further ordered that the four-month period shall commence on the date of the Commitment Order. *Id.* at 2.

In its November 1, 2023 motion to amend that order, the Government informed the Court that the Federal Bureau of Prisons (BOP) had designated Mr. Powell to the Federal Medical Center (FMC) Butner in North Carolina for treatment and potential restoration of competency. ECF No. 59 at 2. However, the Government stated that "a spot will not be available at Butner for at least 8 months." *Id.*

In the Government's status report filed on January 3, 2024, it claimed that the "typical estimated waitlist time is 10–12 months." ECF No. 65, ¶ 4. Mr. Powell then moved for an order directing his immediate transportation to a suitable facility. ECF No. 69. The Court granted that motion in part. ECF No. 70. The Court observed that, based on the

BOP's own estimates, an opening for Mr. Powell would occur in April 2024, at the latest. *Id.* at 2. Thus, the Court ordered Attorney General to hospitalize Mr. Powell no later than April 30, 2024. *Id.* at 5. The Court expressly cautioned the Government that, if it failed to meet the April 30, 2024 deadline, the Court would consider dismissing Mr. Powell's case. *Id.* (citing *United States v. Calderon-Chavez*, 688 F. Supp. 3d 472, 488–89 (W.D. Tex. 2023)).

The Government met the April 30, 2024 deadline. ECF No. 80 (Government's status report representing that Mr. Powell arrived at FMC Devens on April 3, and that his hospitalization and treatment had commenced); ECF No. 84 (letter from FMC Devens's warden, Warden Bowers). On August 15, 2024, Warden Bowers submitted a Competency Restoration Report by Manuel E. Gutierrez, Psy.D, pursuant to 18 U.S.C. § 4241(d), stating that Mr. Powell continued to be incompetent to stand trial but was restorable. ECF No. 90 at 9. Mr. Powell continued to refuse to take medications at FMC Devens for months after the report was filed. ECF No. 170 at 3.

On October 8, 2024, the Government moved for a hearing to involuntarily medicate Mr. Powell with antipsychotic medication pursuant to *Sell v. United States*, 539 U.S. 166 (2003). ECF No. 101. Mr. Powell opposed the *Sell* motion and continued to refuse to take his medication despite multiple physicians urging him to do so. ECF No. 123. The Court initially set the *Sell* hearing for November 14, 2024. ECF No. 105. However, at Mr. Powell's request, the Court rescheduled the hearing for January 13, 2025. ECF Nos. 107, 108, 111.

After the January 13, 2025 hearing, the Court ordered the Government to provide a treatment plan by February 20, 2025. ECF No. 149. The Court also advised Mr. Powell that it was likely to grant the *Sell* motion if the treatment plan was appropriate, and told him that taking his medications would render the next hearing unnecessary. *Id.* Mr. Powell still refused to take his medications. The Government received the treatment plan on February 20, 2025, and filed that plan with the Court. ECF No. 150 (medication treatment plan signed by Dr. Dean Cutillar, General Adult Psychiatrist, FMC Devens).

On March 27, 2025, prior to the continuation of the *Sell* hearing scheduled for April 4, 2025, Mr. Powell provided a psychological evaluation conducted by Dr. Gregory Singleton opining that he is now competent to stand trial. ECF No. 157, ¶ 7; ECF No. 157-1 (Singleton Report). Dr. Singleton opined that Mr. Powell can now properly assist in his defense. ECF No. 157-1. He also summarized a call with Mr. Powell's counsel, who explained that Mr. Powell "is very different now than when we first met. He has an awareness now that he didn't have then, and not only do I think he's able to assist in his defense, he is assisting me in his defense." *Id.* at 9–10.

Because neither party contested that Mr. Powell is now competent, the Government immediately withdrew its motion for administration of involuntary medication and asked to proceed to trial. ECF No. 164. Mr. Powell did not oppose that motion, and asked the Court to find him competent, which the Court did during an April 30, 2025 hearing. ECF No. 167. To the Court's and Government's knowledge, Mr. Powell has never taken his prescribed medication. ECF No. 170 at 3.

## II.    PENDING MOTIONS

### A.    Motion to Dismiss Indictment (ECF No. 87)

Mr. Powell first moved to dismiss the indictment for violations of his rights under the Insanity Defense Reform Act (IDRA) and his Fifth Amendment right to due process. ECF No. 87.

The IDRA allows for the hospitalization of incompetent defendants to determine whether their competency may be restored. 18 U.S.C. § 4241(d). Before such hospitalization, a court must find "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id*. From there, the Court "shall commit the defendant for treatment in a suitable facility." *Id*. That hospitalization may last "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id*., § 4241(d)(1). Mr. Powell contends that the Government failed to comply with the IDRA and the due process clause by delaying his hospitalization.

Even assuming that Mr. Powell is correct that the Government violated § 4241(d) and his due process rights, the Court does not agree with Mr. Powell that dismissal is the appropriate remedy. Mr. Powell acknowledges "that the IDRA does not specify a remedy" for a violation of the statute. ECF No. 95 at 8. Nor does he cite any authority that the Court

must dismiss an indictment under similar circumstances for alleged violations of the Fifth Amendment.

"[C]ourts have [] uniformly held that the remedy for such due process violations is not to *dismiss* the indictment as Defendant requests in his Motion—at least not right away." *Calderon-Chavez*, 688 F. Supp. 3d at 488 (citing *United States v. Berard*, 671 F.Supp.3d 107, 116–18 (D.N.H. 2023) (collecting caselaw)). "Courts have instead unanimously agreed that the first step is to order the Government to admit the defendant to a psychiatric facility by a specified date. Only if the Government misses that deadline may it then be appropriate to dismiss the indictment." *Id.* at 488–89 (citing various district court decisions including *United States v. Lara*, 671 F. Supp. 3d 1257 (D.N.M. 2023)).

The same is true for violations of the IDRA. *See United States v. Gamarra*, 308 F. Supp. 3d 230, 233 (D.D.C. 2018) (finding that the government violated the IDRA but finding that "nothing in Act suggests that dismissal is a necessary or proper remedy. The Act itself provides no particular remedy for violating its time limits. It also does not suggest that a court must make a § 4241(d)(2) determination within the four-month confinement period; indeed, to set such a deadline, particularly when the defense needs time to contest a § 4241(d)(2) motion, could itself raise due process concerns." (citing *United States v. Magassouba*, 544 F.3d 387, 406–07, 411 (2d Cir. 2008)); *id.* (further finding that the Constitution does not require dismissal for violations of the § 4241(d)(2)); *United States v. Donnelly*, 41 F.4th 1102, 1106 (9th Cir. 2022) (finding that the Government violated the IDRA but declining to dismiss, explaining that "Congress did not prescribe dismissal of the indictment as a remedy for violation of the time limits imposed by § 4241(d), as it has,

for example, in the context of violations of time limits imposed by the Speedy Trial Act," such as in 18 U.S.C. § 3162(a)).

Dismissal is the not the proper remedy under the facts of this case. The Government complied with the Court's February 6, 2024 order to hospitalize Mr. Powell no later than April 30, 2024. Mr. Powell has not asserted that the Government engaged in "grossly shocking and outrageous" misconduct necessary to warrant dismissal of the indictment. *Donnelly*, 41 F.4th at 1104.[1] For the above reasons, the Court will not dismiss the indictment. Mr. Powell's first motion to dismiss is denied.[2]

### B.    Motion to Dismiss for Speedy Trial Violations (ECF No. 99)

Mr. Powell has been in custody since September 2022 and has not yet been tried. He argues that this delay—which he contends is "through no fault of his own"—violates

---

[1] For example, Mr. Powell faults the Government for delaying its *Sell* motion by six weeks. ECF No. 169 at 4. Although the Government could have acted with more urgency, Mr. Powell is not blameless. He continually refused to take medication despite medical advice to take it. Then, once the Government filed its motion, Mr. Powell opposed the motion, requested a continuance of the hearing, and still refused to take medication until, at some point in early 2025, he retained a private physician who found him competent. As noted, that physician relied on representations from his counsel that Mr. Powell had been assisting in his defense for some time.

[2] The Government raises two arguments that Mr. Powell ignores in various briefing. *First*, the Government correctly notes that courts have identified available relief for defendants when dismissal is not warranted. In *Magassouba*, the Second Circuit explained that a defendant may (a) "petition this court for a writ of mandamus to compel an inattentive district court to make the findings required by law to support the challenged confinement," or (b) "petition for a writ of habeas corpus to secure release from unlawful custody." 544 F.3d at 411 n.16. Mr. Powell failed to take either step. Although he filed a habeas action in 24-cv-156-CNS in March 2024 requesting *immediate transport to FMC Devens*, the Court dismissed the action as moot because the Government transported him to FMC Devens in April 2024 in compliance with the Court order in his criminal case. He did not later file a habeas action requesting release from FMC Devens. *Second*, even if Mr. Powell was successful in his habeas petition, he likely would have been returned to the marshal's custody under the Bail Reform Act. *See Magassouba*, 544 F.3d at 414–15 (concluding that "the unauthorized §4241(d)(1) hospitalization did not deprive Magassouba of basic liberty" because, had "Magassouba been discharged from hospitalization under that statute at the conclusion of the maximum four-month period, he would not have been released from BOP custody . . . pursuant to the Bail Reform Act, 18 U.S.C. § 3142(e)"); *Gamarra*, 308 F. Supp. 3d at 233 ("If Gamarra had not been confined for evaluation [at FMC Butner], he likely would have remained in pretrial detention, with the same level of deprivation to his liberty rights."). The Court finds these unopposed arguments persuasive.

his Sixth Amendment right and his rights protected under the Speedy Trial Act. ECF No. 99; ECF No. 169 at 7. The Court address each argument in turn.

### i.    Sixth Amendment

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'" *United States v. Garcia*, 59 F.4th 1059, 1064 (10th Cir. 2023) (quoting *United States v. Jumaev*, 20 F.4th 518, 532 (10th Cir. 2021)). The remedy for violating a defendant's Sixth Amendment right is "severe: dismissal of the indictment with prejudice." *Id.* (quoting *United States v. Black*, 830 F.3d 1099, 1111 (10th Cir. 2016) (cleaned up in *Garcia*)). In analyzing whether a delay violates this Constitutional protection, the Court applies a four-part balancing test established in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Garcia*, 59 F.4th 1059, 1064–65 (quoting  *United States v. Medina*, 918 F.3d 774, 780 (10th Cir. 2019)).

### a.  The Length of Delay

This first factor "functions as a gatekeeper." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). Here, the parties dispute which side caused the two-year delay, but they agree that this factor weighs in Mr. Powell's favor. *See id.* ("Delays approaching one year generally satisfy the requirement of presumptive prejudice. . . . [The 17-month] delay, exceeding one year, was presumptively prejudicial."). The Court agrees that the length of delay weighs in Mr. Powell's favor.

*b.* *The Reason for the Delay*

Mr. Powell, with little more, argues that "the government is more to blame than the defendant for this delay. The delay since October 11, 2023 has been because of the government's failure to transport Mr. Powell to a BOP restoration facility pursuant to the Court's Commitment Order." ECF No. 99 at 7. The Court is not persuaded.[3]

As the Government points out, from September 2022 to October 2023, Mr. Powell filed several Ends of Justice continuances. *See* ECF No. 19 (seeking 90-day continuation of Speedy Trial deadline), ECF No. 22 (seeking 120-day continuation), ECF No. 34 (seeking 120-day continuation). And during this window, on July 12, 2023, Mr. Powell then filed a motion for determination of competency. ECF No. 38. The Court found Mr. Powell incompetent to proceed on October 11, 2023. ECF No. 58. The September 2022 to October 2023 delay clearly is attributable to Mr. Powell.

From October 11, 2023, through April 3, 2024, the Government designated Mr. Powell to an FMC for treatment and potential restoration of competency but struggled to find him a bed. After the Court ordered the Government to hospitalize Mr. Powell no later than April 30, 2024, the Government complied. Mr. Powell arrived at FMC Devens on April 3, and his hospitalization and treatment commenced almost immediately. This delay is largely attributable to the Government, but the Court weighs this less heavily compared to a nefarious reason for the delay. *See Barker*, 407 U.S. at 531 ("[D]ifferent weights

---

[3] In response to the Government's assertion that Mr. Powell has caused nearly all of the delays in this case, he argues that the "alleged offense occurred on November 15, 2021, and the government waited until September 8, 2022 to seek an Indictment by a federal grand jury . . . [and] did not arrest him until September 20, 2022. ECF No. 143 at 3. But the time between the alleged offense and the indictment or arrest is not part of the Court's consideration. *See Batie*, 433 F.3d at 1290 ("The length of delay is measured from the time at which the speedy trial right attaches: the earlier of either arrest or indictment.").

should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily . . . ."). Defendant does not argue that the Government purposefully delayed to gain an unfair advantage; rather, the Government sought bedspace at FMCs Butner and Devens after Mr. Powell filed his competency motion. At least one circuit court has acknowledged that delays in transporting a defendant for hospitalization and evaluation should "receive minimal weight because there is nothing to suggest that they resulted from anything more than institutional or bureaucratic negligence." *United States v. Patterson*, 872 F.3d 426, 435 (7th Cir. 2017).

Finally, from April 2024 until the present, the Court generally agrees with the Government that it has been seeking to restore Mr. Powell to competency, and much of the delay is attributable to Mr. Powell. For example, on August 15, 2024, Warden Bowers submitted a Competency Restoration Report by Manuel E. Gutierrez, Psy.D, stating that the Mr. Powell continues to be incompetent to stand trial but is restorable. ECF No. 90. However, "[d]espite encouragement from staff at FMC Devens, Mr. Powell has thus far refused treatment, as he is adamant that he is not mentally ill." *Id.* at 9. That prompted the Government file its *Sell* motion. ECF No. 101.[4] Mr. Powell opposed that motion and continued to refuse to take his medication despite multiple physicians urging him to do so. ECF No. 123. Then, after the Government disclosed its treatment plan ahead of the

---

[4] Mr. Powell faults the Government for waiting until October 8, 2024, to file its *Sell* motion. ECF No. 143 at 6. But after the Court set the *Sell* hearing for November 14, 2024, Defendant sought a continuance of the hearing until January 2025. ECF Nos. 107, 108, 111.

second *Sell* hearing, Mr. Powell notified the Court and the Government that he had retained a private doctor who found that Mr. Powell is now able to assist in his defense. ECF No. 150 (further reporting that he has been assisting his counsel in his defense for some time). Because of his refusal to take medication, his request for continuance, and his later request to find him competent, the Court attributes nearly all of this time period to Mr. Powell. *See United States v. Lathan*, 2023 WL 2523299, at *7 (6th Cir. Mar. 15), *cert. denied*, 143 S. Ct. 2481 (2023) (holding that a 405-day delay in restoring the defendant to competency "weighs in favor of the government because the government had a valid reason to ensure that the defendant was competent to stand trial" (quotation omitted)).

On balance, this factor weighs in the Government's favor.

### c.  Defendant's Assertion of His Rights

The third *Barker* factor "is not satisfied merely by moving to dismiss after the delay has already occurred." *Batie*, 433 F.3d at 1291. The Tenth Circuit has recognized that "[s]uch a motion could be, indeed may well be, strategic. The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Id.* Mr. Powell correctly argues that he sought Court intervention requiring the Government to immediately transport him to a hospital for treatment and evaluation. ECF No. 99 at 7. However, he ignores that he moved for three Ends of Justice continuances totaling 330 days of excluded time. He also ignores that he refused to accept the recommended treatment and medicine. Finally, after continually opposing the Government's *Sell* request, Mr. Powell retained his own doctor to find him competent.

These facts, taken together, do not "demonstrate a desire for a speedier process." *Batie*, 433 F.3d at 1292; *see also United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire.")

This factor also weighs in the Government's favor.

### d.  Prejudice to Defendant

Mr. Powell initially points to no prejudice other than the length of delay, which he argues is presumptively prejudicial. ECF No. 99 at 7–8. In his second reply, after the Government points out that he failed to make any case of prejudice, he argues that the "[p]retrial incarceration has caused him anxiety and a lack of proper treatment for his bone condition," and that he was physically assaulted by another inmate while in custody. ECF No. 143 at 6–7. Critically, Mr. Powell does not argue that his defense is impaired, which is the most important consideration. *Garcia*, 59 F.4th at 1069.

The Government has charged Mr. Powell with robbing two banks and being contacted by police outside of the second bank holding a bag of robbery proceeds that included a tracker. The Court agrees that, if any party is prejudiced by the delay, it is the Government because the Government's witnesses' memories may fade. *See Barker,* 407 U.S. at 521.

The Court does not discount Mr. Powell's anxiety and physical ailments that may be associated with his pretrial detention, but it is his burden to prove that the delay prejudiced him. *Garcia*, 59 F.4th at 1069. "Most of the time, failing to specify prejudice will eviscerate the defendant's claim." *Id.* (quotation omitted); *see also id.* ("Some cases of

extreme delay excuse the defendant's obligation under this factor to show specific evidence of prejudice, but generally the court requires at least a six-year delay before allowing the delay itself to constitute prejudice.").

Because the most serious prejudicial factor is not implicated, the Court finds that this factor also weighs against Mr. Powell.

* * *

In weighing the four factors, the Court finds that three of the four factors weigh in the Government's favor. The Court thus denies Mr. Powell's motion to dismiss on Sixth Amendment grounds.

### ii. Speedy Trial Act

The Speedy Trial Act "requires that a criminal defendant's trial commence within 70 days after he is charged or makes an initial appearance, whichever is later." *Bloate v. United States*, 559 U.S. 196, 198–99 (2010) (citation omitted). However, the Speedy Trial Act further provides that delays caused by certain enumerated events "shall be excluded in computing . . . the time within which the trial . . . must commence." 18 U.S.C. § 3161(h).

Two primary exclusion events are at issue here: (1) any period of delay "resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable," 18 U.S.C. § 3161(h)(1)(F); and (2) "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial," 18 U.S.C. § 3161(h)(4).

Mr. Powell argues that § 3161(h)(1)(F) applies, and therefore, the Government can only exclude 10 days from the Speedy Trial Act for transportation. ECF No. 99. The Government argues that § 3161(h)(4) applies and means what it says: that all time subsequent to the declaration of mental incompetency through the time competency is restored is excluded from the Speedy Trial Act. ECF No. 116. The Court agrees with the Government's interpretation.

Mr. Powell acknowledges that *United States v. Romero*, 833 F.3d 1151 (9th Cir. 2016), is directly on point and counter to his position. ECF No. 99 at 13. There, the defendant was declared incompetent on March 19, 2014, and arrived at his designated BOP facility for restoration of competency on June 19, 2014. *Romero*, 833 F.3d at 1153. The defendant argued that § 3161(h)(1)(F) applied and allotted only 10 days to transport him to the BOP medical facility, and that the rest of the time between March 19 and June 19 was chargeable to the Government under the Speed Trial Act. *Id.* The Ninth Circuit disagreed, holding that § 3161(h)(4) required the exclusion of all the time between when the defendant was declared incompetent and when he was restored to competency. *Id.* at 1154 ("We agree with the government that the entire period between March 19, 2014—when Romero was declared incompetent—and December 12, 2014—when the district court determined that his competency had been restored—is excludable under § 3161(h)(4). The plain meaning of the statute supports this conclusion."). The court noted that Speedy Trial Act expressly provides that "*[a]ny* period of delay resulting from the fact that the defendant is mentally incompetent" "*shall* be excluded" from the Speedy Trial Act calculation. *Id.* (quoting 18 U.S.C. § 3161(h)(4)) (emphasis in original). The court

explained its holding in these terms: "[T]he Speedy Trial Act unambiguously requires the exclusion of all time during which a defendant is incompetent to stand trial. Because this is so, other delays that may or may not occur during a period of incompetence are irrelevant to the Speedy Trial Act calculation." *Id.* at 1155. At least four other circuits have followed *Romero*'s holding.

In *United States v. Patterson*, the defendant argued that the delay between September 14, 2012—when he was remanded to federal custody for treatment—and March 21, 2013—when he arrived at FMC Butner—was chargeable to the government pursuant to § 3161(h)(1)(F). 872 F.3d 426, 433 (7th Cir. 2017). The Seventh Circuit rejected this argument, noting that the defendant ignored "§ 3161(h)(4), which excuses any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." *Id.* (quotations to statute omitted). The court affirmed the district court's decision to exclude the entire period between September 14, 2012, and March 21, 2013, under § 3161(h)(4).

In *United States v. Minton*, the Fourth Circuit held "that 18 U.S.C. § 3161(h)(4) 'automatically excludes all time during which a defendant is incompetent' from the Act's ambit 'whether or not any other provisions of the Act apply.'" *United States v. Minton*, 99 F.4th 692, 693 (4th Cir. 2024) (quoting *Romero*, 833 F.3d at 1154). Similarly, in *United States v. Perry*, the district court deemed the defendant incompetent in September 2021, but the defendant did not arrive at the competency facility until March 2022. 116 F.4th 578, 580 (6th Cir. 2024). Despite the six-month delay, the Sixth Circuit held that § 3161(h)(4) "independently paused the Act's 70-day countdown during Perry's period of

incompetency." *Id.* at 582. The court explained that this "conclusion makes sense not only as a textual matter, but also as a constitutional one. After all, trying a defendant deemed incompetent to assist in his defense violates due process. Perry's approach would penalize the government for failing to bring to trial a defendant who could not lawfully be tried." Finally, the Eleventh Circuit has reached the same outcome:

> We find no error in the District Court's denial of Pendleton's motion to dismiss his indictment under the Speedy Trial Act because fewer than 70 non-excludable days had passed. Pendleton's argument—that the days beyond 10 that it took to transport him to the Medical Center at Springfield should not have been excluded—fails because he was incompetent during that entire time. Hence, such time was properly excluded under § 3161(h)(4). *Pendleton's argument that incompetent defendants should still receive the benefit of § 3161(h)(1)(F)'s 10-day limit on reasonable transportation reads into the statute a conflict between § 3161(h)(1)(F) and (h)(4) that does not exist*.

*United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016) (emphasis added).

In addition to the above decisions from the Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits, Mr. Powell acknowledges that several courts in this District have concluded that § 3161(h)(4) governs once a defendant is deemed incompetent. ECF No. 99 at 13 (citing decisions from Judges Blackburn, Jackson, and Brimmer). In *United States v. Coad*, for example, Chief Judge Brimmer deemed the defendant incompetent and committed him to the custody of the Attorney General on June 10, 2023. 23-CR-77-PAB (D. Colo. April 30, 2024), order at ECF No. 127. The Government, however, did not transport the defendant until December 21, 2023, and it did not expect to complete his evaluation until May 2024. *Id.* at 3. Chief Judge Brimmer relied on *Romero*, *Patterson*, and *Pendleton* and held that § 3161(h)(4) applied to exclude the period of time after the

defendant was ruled incompetent. *Id.* at 6–7 ("The Court agrees with the interpretation of the relevant provisions in these case. Given that the Court, in its June 15, 2023 order, found the defendant incompetent and committed him to the custody of the Attorney General for restoration, the Court finds that there is an ongoing exclusion of time pursuant to § 3161(h)(4).").

The Court follows the overwhelming weight of the authority and finds that, under § 3161(h)(4), the time when the Court declared Mr. Powell incompetent until it determined his competency had been restored is excludable under § 3161(h)(4).[5] The Court thus denies Mr. Powell's motion to dismiss on Speedy Trial Act grounds.

### III.    CONCLUSION

Consistent with the above analysis, the Court makes the following rulings:

- Defendant's Motion to Dismiss Indictment, ECF No. 87, is DENIED;

- Defendant's Motion to Dismiss for Violations of Mr. Powell's Right to a Speedy Trial, ECF No. 99, is DENIED;

- In light of the above rulings, and because the Court has now found Mr. Powell competent to stand trial, the Court MOOTS Mr. Powell's Objection to Extension of 18 U.S.C. § 4241(d)(1) Commitment, ECF No. 100; and

- The Court directs the parties to confer and then jointly contact Chambers at Sweeney_Chambers@cod.uscourts.gov within one week to notify the Court of how many days remain on the speedy trial clock; and to schedule trial, a trial preparation conference, a motions hearing, and a motions deadlines to occur within the Speedy Trial period.

---

[5] There are other excludable events since the Court determined that Mr. Powell's competency has been restored. This order only addresses those event excluded under § 3161(h)(4).

DATED this 29th day of May 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge